IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MCKENZIE WOODARD,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **THE PLASTIC SURGERY CLINIC,** ) <br> **PLLC d/b/a COOL SPRINGS PLASTIC** ) <br> **SURGERY,** ) <br> ) <br> **Defendant.** ) <br> ) <br> ) | **Case No. _____** <br> <br> **JURY DEMAND** |

## COMPLAINT

Plaintiff McKenzie Woodard ("Plaintiff" or "Ms. Woodard") alleges the following claims against Defendant, The Plastic Surgery Clinic, PLLC d/b/a Cool Springs Plastic Surgery ("Defendant"):

## INTRODUCTION

1. This is an action for unlawful employment practices under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Tennessee Human Rights Act, (the "THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*; and the Tennessee Pregnant Workers Fairness Act (the "PWFA"), Tenn. Code Ann. § 50-10-101, *et seq*.

2. Specifically, when Plaintiff attempted to return to work after giving birth, Plaintiff learned that Defendant had allegedly "eliminated" Plaintiff's job. In reality, Defendant transferred many of Plaintiff's job duties to an employee who was not pregnant and/or who had not recently given birth, after making comments about its belief that Plaintiff's "family's needs" would impact

her ability to work. Nearly immediately after Plaintiff complained about discrimination, Defendant terminated Plaintiff in retaliation for engaging in protected conduct.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is a female citizen of the state of Tennessee and resides in Williamson County, Tennessee.

4. Defendant is a Tennessee professional limited liability company with a principal address of 620 Church Street E., Brentwood, Tennessee 37027. Defendant's registered agent is John R. Moore, M.D., 620 Church Street E., Brentwood, Tennessee 37027.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this District.

7. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practices that are the subject of this Complaint.

8. Plaintiff received a Notice of Right to Sue from the EEOC on April 12, 2022.

## STATEMENT OF FACTS

9. Plaintiff worked for Defendant as an Office Manager from October 9, 2017 until her unlawful termination on July 29, 2021.

10. Beginning on or around March 19, 2021, Plaintiff took maternity leave for medical needs arising from her pregnancy, childbirth, and related conditions after giving birth to her second child.

11. On July 8, 2021, Plaintiff sent Defendant an email to discuss her return to work following her maternity leave.

12. On July 8, 2021, John Moore, M.D. ("Dr. Moore"), Defendant's doctor-owner, sent Plaintiff an email stating he wanted to schedule a meeting to discuss a working arrangement that was "best for [Plaintiff] and [her] family."

13. On July 15, 2021, Plaintiff met with Dr. Moore and Konrad Sarosiek, M.D. ("Dr. Sarosiek"), Defendant's other doctor.

14. During this meeting, both doctors asked Plaintiff many questions about her caregiving responsibilities.

15. Plaintiff thought the doctors' questions were odd, because Plaintiff's caregiving responsibilities for her oldest child never previously impacted her ability to successfully perform her job or attend work on agreed-upon days and times.

16. The doctors informed Plaintiff her position as an Office Manager had allegedly been eliminated.

17. Plaintiff learned that many of Plaintiff's duties had been transferred to another employee, Kendall Herndon ("Ms. Herndon").

18. At all times relevant to this Complaint, Ms. Herndon was not pregnant, had not recently given birth, and had not recently taken a leave of absence for medical needs arising from pregnancy, childbirth, and/or related medical conditions. In fact, at all times relevant to this Complaint, Ms. Herndon did not have children.

19. In the July 15, 2021 meeting, Dr. Moore and Dr. Sarosiek told Plaintiff they would create a new role for Plaintiff that "suited her family needs."

20. During this meeting, the doctors stated they knew that Plaintiff's family (*i.e.*, Plaintiff's children) would "require [Plaintiff's time]," and that once Plaintiff placed her newborn in daycare, he would probably start "getting sick," impacting Plaintiff's ability to work.

21. Plaintiff knows of at least one male employee who also had children; Defendant did not make comments to this male employee about the impact of his "family needs" on his ability to work.

22. After the July 15, 2021 meeting, Plaintiff told several coworkers she believed Defendant was discriminating against her because Defendant allegedly "eliminated" her job immediately after she tried to return to work after giving birth; because she had caregiving responsibilities; and because Defendant transferred her duties to Ms. Herndon. Plaintiff also stated she believed she was being punished and treated differently than other employees for being a working woman with children.

23. Plaintiff and Dr. Moore met again on July 27, 2021.

24. Prior to the July 27, 2021 meeting, Dr. Moore had learned about Plaintiff's complaints described above.

25. At the July 27, 2021 meeting, Dr. Moore confronted Plaintiff regarding her complaints of discrimination.

26. In response, Plaintiff told Dr. Moore she did think she was being discriminated against because: (a) Defendant allegedly eliminated Plaintiff's job immediately after she attempted to return to work after giving birth; (b) Defendant transferred her job duties to Ms. Herndon; and (c) she was being penalized for wanting to be a working woman with children.

27. Plaintiff had a reasonable and good faith belief that the practices she complained about were unlawful.

4

Case 3:22-cv-00360   Document 1   Filed 05/17/22   Page 4 of 9 PageID #: 4

28. Dr. Moore told Plaintiff he could no longer trust Plaintiff because she complained about being discriminated against and that Defendant would therefore not be creating the job for Plaintiff they discussed at the July 15, 2021 meeting. Dr. Moore then told Plaintiff her complaints of discrimination "defamed" Defendant and its doctors.

29. Two days later, Dr. Moore called Plaintiff and officially terminated her.

30. In Plaintiff's termination letter and Separation Notice, Defendant stated it could not create a position that met Plaintiff's "family's needs."

31. When Defendant announced Plaintiff's termination to its employees, it stated Plaintiff no longer worked for Defendant because of Plaintiff's "family's needs."

**COUNT ONE: SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*, and THE TENNESSEE HUMAN RIGHTS ACT, TENN. CODE ANN. § 4-21-101, *et seq*.**

32. Plaintiff incorporates Paragraphs 1 through 31 above as if each has been fully restated herein.

33. As a female, Plaintiff is a member of a protected class under Title VII of the Civil Rights Act and the Tennessee Human Rights Act.

34. Plaintiff was qualified for the job of Office Manager and for the new job Defendant planned on transferring Plaintiff into.

35. Defendant took adverse actions against Plaintiff when it allegedly eliminated her job, rescinded its offer to transfer her to another position, and terminated Plaintiff.

36. Defendant's July 15, 2021 interrogation of Plaintiff about her caregiving responsibilities for her children; its statements that Plaintiff needed a role that was "best for her family," that "suited her family needs," that Plaintiff's children would "require [Plaintiff's time]," and that Plaintiff's ability to work would be impacted by her caregiving responsibilities for her

newborn; and its statements that it terminated Plaintiff because of her "family's needs" were based on sex stereotypes about working mothers.

37. Plaintiff knows of at least one male employee with children who was not subjected to scrutiny about whether his "family's needs" would impact his ability to work.

38. Defendant's alleged elimination of Plaintiff's job, rescission of its offer to transfer her to another position, and termination of Plaintiff were based on sex stereotypes.

39. As a result of these acts and omissions, Defendant discriminated against Plaintiff because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Tennessee Human Rights Act.

40. As a result of Defendant's violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT TWO: PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by THE PREGNANCY DISCRIMINATION ACT, and THE TENNESSEE HUMAN RIGHTS ACT, TENN. CODE ANN. § 4-21-101, *et seq*.**

41. Plaintiff incorporates Paragraphs 1 through 40 above as if each has been fully restated herein.

42. In 2021, Plaintiff was pregnant and subsequently took maternity leave following childbirth.

43. Plaintiff was qualified for the job of Office Manager and for the new job Defendant planned on transferring Plaintiff into.

44. Defendant took adverse actions against Plaintiff when it transferred her Office Manager job duties to an employee who was not pregnant and/or who had not recently gone through childbirth, rescinded its offer to transfer her to another position, and terminated Plaintiff.

45. There was a nexus between Plaintiff's pregnancy, childbirth, and/or related medical conditions and the adverse employment actions.

46. As a result of these acts and omissions, Defendant discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, and the Tennessee Human Rights Act.

47. As a result of Defendant's violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT THREE: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the PREGNANCY DISCRIMINATION ACT, and THE TENNESSEE HUMAN RIGHTS ACT, TENN. CODE ANN. § 4-21-101, *et seq.*** 

48. Plaintiff incorporates Paragraphs 1 through 47 above as if each has been fully restated herein.

49. Plaintiff engaged in protected activity under Title VII of the Civil Rights Act and the Tennessee Human Rights Act when she complained about pregnancy and sex discrimination to Defendant.

50. Defendant knew that Plaintiff engaged in protected activity.

51. After Plaintiff engaged in protected activity, Defendant terminated Plaintiff.

52. There was a causal connection between Plaintiff's protected activity and her termination.

53. As a result of these acts and omissions, Defendant violated Title VII of the Civil Rights Act and the Tennessee Human Rights Act.

54. As a result of Defendant's violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

55. Defendant's conduct was malicious and/or recklessly indifferent to Plaintiff's protected rights, entitling her to punitive damages.

**COUNT FOUR: RETALIATION IN VIOLATION OF THE TENNESSEE PREGNANT WORKERS FAIRNESS ACT, TENN. CODE ANN. § 50-1-101,** *et seq.*

56. Plaintiff incorporates Paragraphs 1 through 55 above as if each has been fully restated herein.

57. Plaintiff engaged in protected activity under the PWFA when she took maternity leave for medical needs arising from her pregnancy, childbirth, and related medical conditions.

58. Defendant took adverse actions against Plaintiff, including allegedly eliminating her job and/or rescinding its offer to transfer her to another job and/or terminating her, after she engaged in protected activity under the PWFA.

59. There is a causal connection between Defendant's adverse actions and Plaintiff's protected activity.

60. As a result of these acts and omissions, Defendant violated the Tennessee Pregnant Workers Fairness Act.

61. As a result of Defendant's violation of the PWFA, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorneys' fees.

# RELIEF REQUESTED

WHEREFORE, Plaintiff prays for the following relief:

1. A jury of six try her claims.

2. Entry of judgment in favor of Plaintiff, and against Defendants, for compensatory damages in an amount to be proven at trial.

3. Entry of judgment in favor of Plaintiff for back pay, front pay, and other equitable relief.

4. Entry of judgment in favor of Plaintiff for punitive damages.

5. An award of Plaintiff's costs, reasonable attorneys' fees, and pre- and post-judgment interest.

6. Any other legal or equitable relief to which Plaintiff may be entitled.

Dated: May 17, 2022

Respectfully submitted,

**JESSE HARBISON LAW, PLLC**

/s/ *Jesse Ford Harbison*

Jesse Ford Harbison, BPR No. 032105
P.O. Box 68251
Nashville, TN 37206
(615) 415-3285
jesse@jesseharbisonlaw.com

*Counsel for Plaintiff McKenzie Woodard*

9

Case 3:22-cv-00360   Document 1   Filed 05/17/22   Page 9 of 9 PageID #: 9